J-S78024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIMITRIUS BROWN | : | |
| | : | |
| Appellant | : | No. 3480 EDA 2017 |

Appeal from the Judgment of Sentence Entered September 28, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012767-2015

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 22, 2019**

Dimitrius Brown appeals from the judgment of sentence entered following his conviction for third-degree murder[1] and related firearms offenses.[2]  Brown argues that the court erred in overruling his objection to a remark the prosecutor made during her closing argument, the evidence was insufficient to support the verdict, the verdict was against the weight of the evidence, and the court failed to give adequate consideration to mitigating factors during sentencing. After careful review, we affirm.

_____

\* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(c).

[2] Brown was convicted of persons not to possess firearms, firearms not to be carried without a license, and carrying a firearm in public in Philadelphia. **See** 18 Pa.C.S.A. §§ 6105(c)(8), 6106(a)(1), and 6108, respectively.

The trial court recounted the facts of the crime as evidence presented at Brown's jury trial, and we need not restate them at length here. **See** Trial Court Opinion, filed December 21, 2017, at 2-4. In sum, two eyewitnesses testified that they saw 19-year-old Brown shoot Duval DeShields, Jr., a 14-year-old, in the head, causing his death.

A third witness, O.B., testified that he had not seen the shooting. However, the Commonwealth introduced as substantive evidence a sworn, written statement O.B. had made to police detectives after the shooting, in which O.B. stated he had witnessed the shooting and identified Brown as the shooter. In response, O.B. protested that the statement was forged, he never went to the police station, does not know Brown, and was only testifying at trial due to a subpoena. Detective William Sierra testified that he took O.B.'s statement, a week after the shooting, at the police station. The Commonwealth also introduced the sign-in records from the police station, showing an entry for O.B. on the date of the statement.

Aside from other law enforcement and medical testimony, the Commonwealth entered into evidence recordings of multiple phone calls Brown made from prison. These exhibits were not transmitted to this Court as part of the certified record, and the phone calls were not transcribed in the trial transcript.[3]

---

[3] Photocopies of the covers of the CDs containing the recordings were included in the record.

In Brown's defense, Brown's father testified that he was with Brown in another part of the city on the night of the murder. However, his testimony contradicted the statement he had previously given defense counsel regarding the places and times he was with Brown on the night of the shooting. In addition, he testified that he had not contacted anyone to disclose the alibi until he contacted defense counsel ten days before the trial.

After the close of evidence, the court instructed the jury that closing arguments are not evidence and that the jury is not bound by counsel's recollection of the evidence or counsel's perspective. During his closing argument, Brown's attorney emphasized that O.B. had recanted the statement he gave to the detectives identifying Brown as the shooter. Specifically, Brown's attorney argued to the jury, "[O.B.] got on the witness stand. He said that statement, forget about it, never happened, nothing." N.T., 7/12/17, at 99.

During the Commonwealth's closing argument, the prosecutor argued that it is common for witnesses to recant statements. The prosecutor stated,

> You heard from [O.B.] on the first day of trial, and I said he is what we call, "south." What do I mean by that? He recanted or tried to take back what he told the detectives. He made an inconsistent statement. When I say, "south," that is actually a common phrase we use. Because it is that common for witnesses to recant.

*Id.* at 119.

Brown objected. The court overruled the objection, but instructed the prosecutor to explain her comment to the jury. The prosecutor argued to the

jury that prior inconsistent statements are admissible as evidence of the truth if written and signed. She then set forth facts supporting why the jury should not find O.B.'s trial testimony credible, including that he had admitted that he was testifying reluctantly, under subpoena, and that he claimed never to have made a statement to the police, or even gone to the police station, which was contradicted by the testimony of the detective who took his statement at the police station and the sign-in book. The prosecutor also argued that O.B.'s written statement was credible, noting that the content of his statement corroborated the testimony of the two other eyewitnesses, and that immediately after the shooting, 14-year-old O.B. would not have been thinking about the repercussions of making a truthful statement to the police.

The prosecutor also re-played one of the phone calls Brown made from prison. The prosecutor described the content of the call as an attempt by Brown to instruct O.B. to recant his statement:

> They're talking about [O.B.]. . . . [Brown] says: "Either you can give him [Brown's attorney's] number so that when [O.B.] goes down to his office and, like, fill out paperwork, like a statement, like it was a lie, like the mother fucking homicide detectives, like, made him do that."

*Id.* at 126. Brown did not object to this characterization of the recording, or the prosecutor's explanation for why the jury should credit the contents of O.B.'s statement.

The jury convicted Brown of the offenses listed above. At the sentencing hearing, both Brown and the Commonwealth presented evidence, and the

court reviewed the contents of a presentence investigation report and mental health report. The court sentenced Brown to serve a term of 20 to 40 years' imprisonment for third-degree murder and lesser sentences on the other charges, for an aggregate of 22½ to 45 years' imprisonment.[4] Brown filed a post-sentence motion, which the court denied.

Brown appealed, and presents the following issues:

A. Whether the trial court erred in overruling defense counsel's objection to the prosecutor's closing argument that it was common for witnesses to recant, thereby causing significant prejudice to [Brown]?

B. Whether the trial court erred in sentencing [Brown] to 25 to 50 years of confinement despite his mitigation presented at the sentencing hearing.

C. Whether the evidence was sufficient under the appropriate standards of review to prove the charges beyond a reasonable doubt.

D. Whether the verdict was against the weight of the evidence.

Brown's Br. at 5.

## I. The Prosecutor's Closing Remarks

In his first issue, Brown argues that the prosecutor improperly remarked during her closing argument that it was common for witnesses to recant prior statements. Brown contends that the prosecutor's comment did not "relate back to the evidence of record." Brown's Br. at 10. Brown also argues the

---

[4] The court sentenced Brown to serve a consecutive term of two and one-half to five years' imprisonment for persons not to possess a firearm and concurrent terms of two and one-half to five years' and one to two years' imprisonment for firearms not to be carried without a license and carrying a firearm in public in Philadelphia, respectively.

comment constituted "improper vouching for the prior statement and the police testimony about it," and "prejudiced the jury to think they need not consider the direct testimony of O.B." ***Id.***

Initially, we note that it would be within our purview to find this claim waived, as Brown did not request a mistrial or curative instruction either during trial or in his post-sentence motion, in which Brown did not raise the issue of the prosecutor's closing remarks. ***See Commonwealth v. Sandusky***, 77 A.3d 663, 670 (Pa.Super. 2013). In any event, we find the claim to be without merit.

We will not grant a new trial based on statements made by the prosecutor during closing argument unless "the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." ***Commonwealth v. Burno***, 94 A.3d 956, 974 (Pa. 2014) (quoting ***Commonwealth v. Spotz***, 47 A.3d 63, 98 (Pa. 2012)). Both the prosecution and defense are "accorded reasonable latitude and may employ oratorical flair in arguing" to the jury. ***Commonwealth v. Williams***, 896 A.2d 523, 542 (Pa .2006).

Moreover, we evaluate the prosecutor's remarks not in a vaccum, but in context. ***Commonwealth v. Rolan***, 964 A.2d 398, 410 (Pa.Super. 2008). A remark will not be found inappropriate if based on the evidence presented at trial. ***Williams***, 896 A.2d at 542. And, while the prosecutor should not offer a personal opinion as to the credibility of a witness, the prosecutor is permitted

to respond to defense arguments. **Burno**, 94 A.3d at 974. A prosecutor only improperly "bolsters" a witness by personally assuring the jury of the witness's truthfulness or suggesting extrinsic information confirms the witness's testimony. **Commonwealth v. Reid**, 99 A.3d 427, 447-48 (Pa. 2014).

We find no impropriety in the prosecutor's remarks that O.B. went "south" and that this is a common occurrence for trial witnesses. The law allows for the introduction of prior statements made under reliable circumstances because inconsistency in witness testimony is not uncommon. **See** Pa.R.E. 803.1(1) (providing prior inconsistent statement by trial witness admissible as substantive evidence of truth if signed and adopted by the witness). Such a statement may possess "superior indicia of reliability as it was rendered at a point in time closer to the event described . . . when memory will presumably be fresher and opportunity for fabrication lessened." **Commonwealth v. Wilson**, 707 A.2d 1114, 1119 (Pa. 1998) (quoting **Commonwealth v. Brady**, 507 A.2d 66, 69 (Pa. 1986)).

Here, the Commonwealth introduced evidence that O.B.'s statement was accurate and his trial testimony fabricated. It did so through evidence that O.B. went to the police station and made a statement that corroborated the testimony of the other two eyewitnesses, despite O.B.'s trial testimony to the contrary, and evidence that Brown suggested during a phone call made from prison that O.B. should recant the statement. Therefore, the prosecutor's remarks indicating that O.B.'s statement was more credible than his testimony was based on trial evidence. **Williams**, 896 A.2d at 542.

Moreover, the Commonwealth's attempt to emphasize the credibility of O.B.'s statement was a permissible response to the defense's argument that the jury should discredit the statement. **Burno**, 94 A.3d at 974. And, as the prosecutor did not personally opine that the statement was truthful, or imply that there were extrinsic reasons for the jury to credit the statement, she did not improperly bolster the credibility of the statement to the jury. **Reid**, 99 A.3d at 447-48. In addition, the court instructed the jury that it was not to construe the arguments of counsel as evidence, and was to weigh the credibility of each witness. **See Commonwealth v. Laird**, 988 A.2d 618, 629 (Pa. 2010) (stating law presumes jury followed court's instructions).

We therefore conclude the trial court did not abuse its discretion in overruling Brown's objection to the prosecutor's closing remarks under the circumstances present in this case.

## II. Weight and Sufficiency of Evidence

Brown argues the evidence was insufficient because there was no physical evidence "linking" him to the homicide and he impeached the testimony of the three eyewitnesses as follows: O.B. recanted his testimony, the second eyewitness gave a description to the police which did not match Brown, and the third eyewitness testified she was not wearing her eyeglasses when she saw the shooting and gave inconsistent testimony. Brown states the verdict was against the weight of the evidence "for the same reasons." Brown's Br. at 11.

We caution that challenges to the weight and sufficiency of the evidence are separate and distinct claims, which are viewed under different standards of review, and, when successful, warrant different remedies. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Nevertheless, the trial court explained the legal standards for deciding both the sufficiency and weight claims, and decided them accordingly. Upon review of the parties' briefs, the applicable law, and the certified record, we discern no error of law or abuse of discretion in the trial court's analysis. We therefore affirm the trial court's disposition of these issues on the basis of the opinion of the Honorable Barbara A. McDermott, which we adopt and incorporate herein. *See* Tr. Ct. Op. at 5-8.

### III. Sentencing

In his final issue, Brown argues that the court incorrectly "decided [Brown] had no mitigating circumstances, despite the record showing his traumatic family upbringing, his youthful age, family support and lack of direction in life." Brown's Br. at 11. Brown also argues his sentence, while falling within the standard range of the Sentencing Guidelines, was "excessive for satisfying the statutory goal[s] of sentencing." *Id.*

Before addressing the merits of Brown's claim, we must determine whether: (1) the appeal is timely; (2) the issue was preserved; (3) the brief includes a Pa.R.A.P. 2119(f) statement; and (4) the statement raises a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." *See Commonwealth v. Heaster*, 171 A.3d

268, 271-72 (Pa.Super. 2017) (quoting *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa.Super. 2010)), *appeal denied*, 181 A.3d 1078 (Pa. 2018).

The Commonwealth argues that Brown has failed to include a Pa.R.A.P. 2119(f) statement in his brief, and thus his challenge to the discretionary aspects of his sentence is waived. We agree. *See Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa.Super. 2004) (holding appellate court has no discretion to allow appeal when appellee objects to omission of Rule 2119(f) statement). Moreover, a guidelines sentence is presumed appropriate. *Commonwealth v. Maneval*, 688 A.2d 1198, 1199 (Pa.Super. 1997). Further, where a court had the benefit of a presentence investigation report, as it did here, we presume the court was aware of all relevant information. *See Commonwealth v. Bonner*, 135 A.3d 592, 605 (Pa.Super. 2016); Tr. Ct. Op. a 9-10 (stating trial court reviewed presentence and mental health reports and considered all relevant sentencing factors). Therefore, were the discretionary sentencing issue not waived by Brown's failure to petition this court for review, we would find the issue lacking in merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/22/19

- 10 -

**FILED**

DEC 2 1 2017

Office of Judicial Records
Appeals/Post Trial

### IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :   CP-51-CR-0012767-2015

 

       v.                              :    3480 EDA 2017

DIMITRIUS BROWN



CP-51-CR-0012767-2015 Comm. v. Brown, Dimitrius
Opinion

8046648391

### OPINION

**McDermott, J.**                                       **December 21, 2017**

## Procedural History

On October 16, 2015, the Defendant, Dimitrius Brown, was arrested and charged with murder and related offenses. On July 10, 2017, the Defendant appeared before this Court and elected to be tried by a jury. On July 14, 2017, the jury convicted him on all charges. On September 28, 2017, this Court sentenced the Defendant to twenty to forty years of imprisonment for Third-Degree Murder, with concurrent terms of two and a half to five years for Firearms Not to be Carried Without a License and one to two years for Carrying a Firearm in Public in Philadelphia, and a consecutive term of two and a half to five years for Persons Not to Possess a Firearm, for a total sentence of twenty-two and half to forty-five years of imprisonment.

On October 10, 2017, this Court denied the Defendant's timely Post-Sentence Motion. On October 25, the Defendant timely appealed. On November 10, 2017, the Defendant filed a 1925(b) Statement of Matters Complained of on Appeal.

**Facts**

On October 12, 2015, around 8 p.m., in Philadelphia, the decedent, Duval DeShields, Jr. (age fourteen), Brianna Boone, and friends were riding bikes when DeShields received a cell phone call. After the call, DeShields told Boone that someone's mother was around the corner looking for him because he had been accused him of "messing with" a little boy. Earlier that day, Boone, DeShields, and another friend had broken up a fight between minors on 10th Street. When another fight was about to begin, DeShields had pulled out a BB gun. N.T., 7/11/2017 at 221–24.

After the phone call, DeShields was afraid to ride around the corner, but with some convincing from Boone that he had nothing to fear, they rode their bikes to 10th Street. When they arrived, the Defendant, Dimitrius Brown (who Boone knew as "Meek"), approached DeShields. Boone, standing just a few feet away, heard the Defendant ask DeShields, "what makes you think it's cool for you to pull your gun out on my young bol [sic]?" According to Boone, after DeShields said he did not have a gun, the Defendant grabbed DeShields' arm. When DeShields yanked away from the Defendant and started to run, the Defendant pulled a revolver from his coat and shot him. At trial, Boone identified the Defendant as the shooter and testified that she knew the Defendant for two or three years before the shooting. Boone also testified that she saw the Defendant cleaning or fixing the same revolver a couple of days before the shooting. It was stipulated at trial that the Defendant did not have a license to carry a firearm. N.T., 7/11/2017 at 199–201, 204–05, 207, 242, 255, 265.

A week after the murder, O.B., age fourteen at the time, gave a statement to detectives.[1] In his statement, O.B. said that he was at home on the night of the shooting when his friend T.G.

---

[1] O.B. went "south" at trial, but his statement to detectives was admitted as substantive evidence under *Brady/Lively*. *See Commonwealth v. Lively*, 703 A.2d 467 (Pa. Super. 1997).

arrived and told him that DeShields had pulled a gun on T.G.'s little brother. According to T.G., DeShields had also flashed a gun at him. T.G. told O.B. that he wanted to fight DeShields. O.B. and T.G. then walked to 10th and Thompson Streets, the intersection just above where the instant shooting would occur. N.T., 7/10/2017 at 241–47; N.T., 7/11/2017 at 145–46.

According to O.B., right before the shooting, while O.B. and T.G. were near 10th Street, the Defendant, who O.B. knew as "Meat," walked up to O.B. and the two had a brief conversation. Shortly after their conversation, DeShields arrived on his bike with some friends. The Defendant walked toward DeShields while O.B. tried to grab the Defendant's arm, but the Defendant yanked it away. Consistent with Boone's testimony, O.B. told detectives that the Defendant approached DeShields and that the two had a brief conversation; then they started grabbing at each other in a scuffle. When DeShields attempted to run, the Defendant shot him. N.T., 7/10/2017 at 247–48, 52; N.T., 7/11/2017 at 57–59.

At trial, T.G. testified that immediately before the shooting, he saw the Defendant grab DeShields' hand as DeShields was trying to pull his gun out; when DeShields attempted to run, the Defendant shot him. In an interview with detectives on October 19, 2015, T.G. identified the Defendant as the shooter. T.G. again identified the Defendant at trial. N.T., 7/11/2017 at 145–49, 172, 181, 190.

When police arrived at the scene shortly after the shooting, they found DeShields lying on the ground, bleeding from his head. They placed him in the back of an SUV and transported him to Hahnemann Hospital. At Hahnemann, when police handed DeShields to medical personnel, a BB gun, with an orange tip on the front of the barrel, fell from DeShields' person onto the floor of the SUV. The BB gun was a Chinese made, black plastic, 25-caliber, air soft-

3

type pistol, which resembled a Glock-type semiautomatic gun. N.T., 7/10/2017 at 197–99, 202–04; N.T., 7/11/2017 at 108–09.

DeShields was pronounced dead at 10:00 a.m. on October 13, 2015. According to the medical examiner, Dr. Lindsay Simon, DeShields was shot with a single bullet which entered the left side of his head, above and slightly behind his left ear, perforated his skull and brain, and exited the right side of his forehead above his eyebrow. The cause of death was a gunshot wound to the head; the manner of death was homicide. N.T., 7/1012017 at 126–27, 132.

The Defendant presented his father Kerry Brown ("Mr. Brown") as an alibi witness, to which the jury, based on their verdict, rejected. On July 2, 2015, ten days before the instant trial, the Defendant's father, told defense counsel that he was with the Defendant until 8:45 p.m. in another part of the city the night of the murder.[2] The murder occurred at around 8:30 p.m. At trial, Mr. Brown testified that he was with his son at C and Somerset Streets in the Kensington section of the city; but, inconsistent with his statement to defense counsel, he said that he left his son at 8:20 p.m. When asked why he waited so long to inform anyone about his son's alibi, Mr. Brown explained that his son had reminded him a couple of times to say something but that he had been preoccupied—he told his son, "I will get to it." N.T., 7/12/2017 at 25, 34, 36, 44, 64–65.

## Discussion

The Defendant claims that there was insufficient evidence to sustain the verdict for his Third-Degree Murder conviction. He specifically argues that the Commonwealth did not sufficiently identify him as the shooter and that the witnesses' testimony were inconsistent. He also claims that he presented credible alibi evidence.

---

[2] Defense counsel memorialized the statement.

4

Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt. *Commonwealth v. Baumhammers*, 960 A.2d 59, 68 (Pa. 2008). The Commonwealth may sustain its burden of proving each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Estepp*, 17 A.3d 939, 943 (Pa. Super. 2011) (*citing Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa. Super. 2010)). The fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. *Commonwealth v. Diamond*, 83 A.3d 119 (Pa. 2013). The Superior Court considers all the evidence admitted, without regard to any claim of wrongly admitted evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010). The Superior Court will also not weigh the evidence or make credibility determinations. *Id.*

Third-Degree Murder is "all other kinds of murder" other than First- or Second-Degree Murder. *Commonwealth v. Marquez*, 980 A.2d 145, 148 (Pa. Super. 2009); *see also* 18 Pa.C.S. § 2502(c). The elements of Third-Degree Murder, developed by case law, are a killing done with legal malice. *Marquez, supra (citing Commonwealth v. MacArthur*, 629 A.2d 166 (Pa. Super. 1993). Malice for Third-Degree Murder is defined as:

> wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

*Commonwealth v. Thompson*, 106 A.3d 742, 757 (Pa. Super. 2014).

The Defendant's claim is meritless as the evidence was more than sufficient to sustain the verdict. Three eyewitnesses identified the Defendant as the person who shot DeShields after DeShields attempted to run. DeShields was shot in the back of the head, consistent with the witnesses' testimony. Further, malice for Third-Degree Murder can be inferred from the Defendant's use of a deadly weapon in shooting DeShields in the head, a vital body part. *Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012) (*citing Commonwealth v. Gooding*, 818 A.2d 546, 550 (Pa. Super. 2003)).

The Defendant's claim that the witnesses' identifications of the Defendant "were too inconsistent" is misplaced. This claim goes to the weight of the evidence, not the sufficiency. Nonetheless, this claim warrants no relief as the eyewitnesses were largely consistent. Each eyewitness identified the Defendant as the shooter, each saw the Defendant shoot DeShields as he attempted to run, and each knew the Defendant and the victim before the shooting. If there were minor inconsistencies in the witnesses' testimony, the jury was free to resolve these inconsistencies and still find for the Commonwealth.

As for the Defendant's proffered alibi defense from his father, the jury clearly rejected it after finding it not credible. Mr. Brown testified that he was aware of his son's arrest not long after the murder, yet he waited until ten days before trial—over a year after his son's arrest—to inform anyone about his son's alibi. Mr. Brown incredibly explained that the reason for the delay was that he had been preoccupied. Mr. Brown's testimony was also inconsistent in that while the murder occurred at around 8:30 p.m., Mr. Brown initially gave defense counsel a statement claiming that he left his son at 8:45 p.m.; at trial, he said that he left his son at 8:20.

The Defendant claims that his conviction for Third-Degree Murder was against the weight of the evidence. An argument that the verdict is contrary to the weight of the evidence

6

concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citing *Commonwealth v. Sullivan*, 820 A.2d 795, 805–06 (Pa. Super. 2003); *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror." *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa. Super. 2007) (*citing Widmer, supra*)).

For weight of the evidence claims, the Supreme Court has explained that the test is whether the verdict must be so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). Since the fact finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, for a defendant to prevail on a challenge of the weight, the evidence must be "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003). An appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Morris*, 958 A.2d 569, 577 (Pa. Super. 2008) (*citing Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003)). A weight of the evidence challenge is one of the least assailable reasons for granting or denying a trial. *Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014) (*citing Widmer*, 744 A.2d at 753).

This claim is devoid of merit as the jury's verdict did not shock one's sense of justice. The Commonwealth presented a considerable amount of eyewitness testimony and physical

7

evidence that the Defendant fatally shot DeShields while DeShields attempted to run from him. The jury's verdict indicates that they chose to believe this evidence rather than the Defendant's theory of the case.

The Defendant next claims that the Commonwealth's comment in closing arguments, that it was common for witnesses to recant their statements, after O.B. went "south" at trial, had an incurable effect on the jury. After the Commonwealth made this statement, defense counsel objected. This Court overruled the objection, but informed the Commonwealth that she could explain what she meant. The Commonwealth then proceeded to accurately explain to the jury why previously signed and adopted statements can be admitted as substantive evidence. *See Commonwealth v. Lively*, 703 A.2d 467 (Pa. Super. 1997). Because the Commonwealth merely—and accurately—explained the law, which is within its purview, this claim requires no relief.[3]

Finally, the Defendant claims that his sentence was excessive. In furnishing a sentence, a trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense [. . .] and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). It is well-settled that sentencing is a matter vested in the sound discretion of the trial court, and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014) (*citing Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007)). An abuse of discretion is not merely an error in judgment, but a defendant must establish that the sentencing court misapplied the law or exercised its judgment for reasons of partiality, prejudice, bias, or ill-

---

[3] *See* N.T., 7/12/2017 at 121–127.

8

will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003).

A defendant challenging the discretionary aspects of his sentence must establish, *inter alia,* that there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016) (*quoting Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015) (citations omitted)). A substantial question exists when an appellant raises "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015). The consecutive nature of a defendant's sentence does not raise a substantial question. *Commonwealth v. Zirkle*, 107 A.3d 127, 134 (Pa. Super. 2014).

In imposing a sentence, a court shall follow the general principle that the sentence imposed calls for conferment that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). Where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that its discretion should not be disturbed. *Commonwealth v. Bullock*, --- A.3d --- (Pa. Super. 2017) (*citing Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009)).

This Court reviewed the Defendant's presentence and metal health reports before sentencing. This Court reviewed and considered the Defendant's age, upbringing, educational background, and criminal history. This Court also considered the Defendant's rehabilitative needs and the sentencing guidelines. With a prior record score of five, and an offense gravity

9

score of fourteen, the standard range of a minimum sentence for the Defendant's Third-Degree Murder conviction was sixteen years of imprisonment to the statutory limit. His sentence of twenty to forty years imprisonment for Third-Degree Murder was within the standard range and did not exceed the statutory limit. His sentence was also appropriate given the seriousness of the offense and the effect it had on the community. The Defendant fatally shot a fourteen year old minor in the head just a few feet from other minors. As such, no relief is due.

For the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT,

Barbara A. McDermott, J.

*Commonwealth v. Dimitrius Brown*
CP-51-CR-0023767-2016

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Alison Ruth, Esq.

**Type of Service:** **DA's Courthouse Assigned Box**

Ben Cooper, Esq.
1601 Cherry Street
Ste. 1320
Philadelphia, PA 19102

**Type of Service:** **First-Class Mail**

Dimitrius Brown
MU7427
SCI Chester
500 E. Fourth Street
Chester, PA 19013

**Type of Service:** **Certified Mail**

**Dated: December 21, 2017**

R. Christopher Campbell, Esq.
Judicial Clerk to the
Honorable Barbara A. McDermott